UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| INTERPAGE CO., INC. | : | Case No. 10-cv-2475(FB)(VVP) |
|  | : |  |
|  | : | ECF CASE |
| Plaintiff, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| ROSHEN USA CORP., | : |  |
| AV DELICIOUS FOODS, INC., and | : |  |
| KONDITERSKA KORPORATZIA "ROSHEN", | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

-------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AS TO ROSHEN USA CORP. AND AV DELICIOUS FOODS, INC.**

Charles H. Knull (CHK-1741)
Linda M. Dougherty (LD-2813)
ULLMAN, SHAPIRO & ULLMAN, LLP
299 Broadway, Suite 1700
New York, New York  10007
Tel. (212) 571-0068
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iv

I. BACKGROUND ...........................................................................................1

   A.  Plaintiff's Efforts In Building The ROSHEN™ Brand ...............................1

   B.  Defendants' Actions In Trading On Plaintiff's Efforts ............................3

II. ARGUMENT ...............................................................................................5

   A.  Standard For Granting A Preliminary Injunction ...................................5

      1.  An Injunction Would Be In The Public Interest ................................5

      2.  There Would Be Irreparable Harm If No Injunction Is Ordered .......6

      3.  An Injunction Would Maintain The Status Quo .................................8

      4.  The Balance Of Equities Tips In Movant's Favor ............................8

   B.  Plaintiff Is Likely To Succeed On The Merits .......................................8

      1.  Likelihood Of Success Under The Standard For Unfair Competition
         (False Statements) ...........................................................................8

      2.  Likelihood Of Success Under The Polaroid Test (Quality Control) ...............10

         i.  Factor (1): The ROSHEN™ Mark Is A Strong Trademark.........................12

         ii.  Factor (2): Plaintiff's and Defendants' Marks are Identical ......................13

         iii.  Factor (3): The Competitive Proximity is Extremely Close......................13

         iv.  Factor (4): "Bridging the Gap" Is Not at Issue ..........................................14

         v.  Factor (5): Actual Confusion Is Not Required............................................14

         vi.  Factor (6): Defendants Are Not Acting in Good Faith ..............................14

         vii.  Factor (7): Quality of the Products ...........................................................16

         viii.  Factor (8): Sophistication of Buyers of ROSHEN™ Products ..............17

3.  Likelihood Of Success Under New York Statutory And Common Law ..........17

   i.  New York Statutory and Common Law Infringement ................................17

   ii.  N.Y.G.B.L § 360-l .................................................................................18

   iii.  New York Common Law Unfair Competition ..........................................18

   iv.  N.Y. G.B.L. § 349 ................................................................................19

IV.  CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

## <u>CASES</u>

<u>American Footwear Corp. v. General Footwear Co.</u>
609 F.2d 655 (2d Cir. 1979) ...................................................................................6

<u>Arrow Fastener Co. v. Stanley Works</u>
59 F.3d 384 (2d Cir. 1995)....................................................................................14

<u>Artisan Mfg. Corp. v. All Granite & Marble Corp.</u>
559 F. Supp.2d 442 (S.D.N.Y. 2008)....................................................................15

<u>Bell & Howell: Mamiya Co. v. Masel Supply Co.</u>
719 F.2d 42 (2d Cir. 1983).....................................................................................6

<u>Burberry Ltd. and Burberry USA v. Designers Imports, Inc.</u>
2010 WL 199906 (S.D.N .Y. Jan 19, 2010) ..........................................................17

<u>Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.</u>
1995 WL 528001 (S.D.N.Y. Sept. 6, 1995)..........................................................12

<u>Castrol, Inc. v. Quaker State Corp.</u>
977 F.2d 57 (2d Cir. 1992).....................................................................................9

<u>Church of Scientology Int'l v. Elmira Mission of the Church of Scientology</u>
794 F.2d 38 (2d Cir. 1986)......................................................................................7

<u>Clinique Laboratories, Inc. v. Dep Corp.</u>
945 F.Supp. 547 (S.D.N.Y. 1996).........................................................................13

<u>Coca-Cola Co. v. Gemini Rising, Inc.</u>
346 F.Supp. 1183 (E.D.N.Y. 1972) .......................................................................18

<u>DC Comics v. Kryptonite Corp.</u>
 336 F. Supp.2d 324 (S.D.N.Y. 2004)....................................................................11

<u>DEP Corp. v. Interstate Cigar Co.</u>
622 F.2d. 621 (2d Cir. 1980).................................................................................7

<u>Deere & Co. v. MTD Prods., Inc.</u>
41 F.3d 39 (2d Cir. 1994) .....................................................................................18

<u>E.I. DuPont de Nemours & Co. v. Yoshida International, Inc.</u>
393 F. Supp. 502 (E.D.N.Y. 1975) .......................................................................15

El Greco Leather Products Co. v. Shoe World
806 F.2d 392 (2d Cir. 1986)..........................................................................................10,16

Federal Express Corp. v. Federal Espresso, Inc.
201 F.3d 168 (2d Cir. 2000)..................................................................................................6

Franklin Resources, Inc. v. Franklin Credit Management Corp.
988 F. Supp. 322 (S.D.N.Y. 1997)......................................................................................12

Gruner + Jahr USA Publishing v. Meridith Corp.
991 F.2d 1072 (2d Cir. 1993)..............................................................................................12

GTFM, Inc. v. Solid Clothing, Inc.
215 F. Supp.2d 273 (S.D.N.Y. 2002)..............................................................................17,19

Gucci Am., Inc. v. Curveal Fashion
2010 WL 308303 (S.D.N.Y. Jan. 20, 2010) .........................................................................7

Guinness United Distillers & Vintners B.V. v. Anheuser-Busch, Inc.
2002 WL 1543817 (S.D.N.Y. July 12, 2002) .....................................................................17

Gund, Inc. v. SKM Enterprises, Inc.
2001 WL 125366 (S.D.N.Y. Feb. 14, 2001) .........................................................................5

Kraft Gen. Foods, Inc. v. Allied Old English, Inc.
831 F. Supp. 123 (S.D.N.Y. 1993)...................................................................................7,18

Les Ballets Trockadero De Monte Carlo, Inc. v. Trevino
945 F. Supp. 563 (S.D.N.Y. 1996)........................................................................................8

Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.
965 F.2d 1224 (2d Cir.1992)..................................................................................................5

Lois Sportswear, U.S.A. v. Levi Strauss & Co.
799 F.2d 867 (2d Cir. 1986)................................................................................................14

Maurizio v. Goldsmith
230 F.3d 518 (2d Cir. 2000)................................................................................................19

Nabisco, Inc. v. PF Brands, Inc.
50 F. Supp.2d 188 (S.D.N.Y. 1999)................................................................................18,19

Natural Organics, Inc. v. Nutraceutical Corp.
426 F.3d 576 (2d Cir. 2005)................................................................................................11

New Kayak Pool Corp. v. R&P Pools, Inc.
246 F.3d 183 (2d Cir. 2001)..................................................................7

Pfizer Inc. v. Sachs
652 F. Supp.2d 512 (S.D.N.Y. 2009)....................................................15,16

Polaroid Corp. v. Polarad Elecs. Corp.
287 F.2d 492 (2d Cir.1961)..................................................................11

Rescuecom Corp. v. Google Inc.
562 F.3d 123 (2d Cir. 2009)..................................................................11

Saban Entm't, Inc. v. 222 World Corp.
865 F. Supp. 1047 (S.D.N.Y. 1994)........................................................7

Saratoga Vichy Spring Co. v. Lehman
625 F.2d 1037 (2d Cir. 1980).................................................................19

S.C. Johnson & Son, Inc. v. Clorox Co.
241 F.3d 232 (2d Cir. 2001)..................................................................9

Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc.
823 F. Supp. 1077  (S.D.N.Y. 1993)......................................................15,19

Thompson Med. Co., Inc. v. Pfizer, Inc.
753 F.2d 208 (2d Cir. 1985)..................................................................12

Time Warner Cable, Inc. v. DIRECTV, Inc.
497 F.3d 144 (2d Cir. 2007)..................................................................9

Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.
60 F.3d 27 (2d Cir. 1995) ....................................................................8

Tri-Star Pictures, Inc. v. Unger
14 F. Supp.2d 339 (S.D.N.Y. 1998).......................................................13,14,19

Two Pesos v. Taco Cabana
505 U.S. 763 (1992)............................................................................10,11

Virgin Enterprises Ltd. v. Nawab
335 F.3d 141 (2d Cir. 2003)..................................................................13,16

Weight Watchers Int'l, Inc. v. Luigino's, Inc.
423 F.3d 137 (2d Cir. 2005)..................................................................7

Winter v. Natural Resources Defense Council, Inc.
129 S.Ct. 365 (2008)..................................................................................5

Wright v. City of New York
2010 WL 167951 (E.D.N.Y. Jan. 06, 2010) .......................................5

W.W.W. Pharm. Co. v. Gillette Co.
984 F.2d 567 (2d Cir. 1993)..............................................................19

Young-Flynn v. Wright,
2007 WL 241332 (S.D.N.Y. Jan. 26, 2007) ......................................5

Zino Davidoff SA v. CVS Corp.
571 F.3d 238 (2d Cir. 2009).............................................................6,7

Zip International Group, LLC v. Trilini Imports, Inc.
2010 WL 648696 (E.D.N.Y. Feb. 22, 2010)......................................7

**STATUTES AND RULES**

15 U.S.C. § 1125(a)(1) (2010) .........................................................9,10

N.Y. Gen. Bus. Law G.B.L. § 360-l (2010) ......................................18

N.Y. Gen. Bus. Law G.B.L. § 349 (2010) ........................................19

**TREATISES**

McCarthy, J. Thomas
McCarthy on Trademarks and Unfair Competition, Vol. 5 § 30:31 (2008) .......................7

Plaintiff Interpage Co. Inc. ("Interpage"), respectfully submits this memorandum of law in support of its motion for a preliminary injunction to prevent the irreparable and imminent harm that is being caused to Interpage by Defendants Roshen USA Corp. ("Roshen USA") and AV Delicious Foods, Inc. ("AV Delicious") through their false statements and other unfair competition relating to the trademark exclusively licensed to Plaintiff (the "ROSHEN™ Mark"), including their actions  concerning Plaintiff's exclusive right to distribute products under the ROSHEN™ Mark ("ROSHEN™ Products") in the U.S.  Plaintiff has also become aware that Defendants will imminently be receiving a shipment by sea of a large quantity of the ROSHEN™ Products.  Interpage seeks this preliminary injunction hearing in order to prevent Defendants from causing Plaintiff immediate and irreparable injury if they are permitted to receive and distribute these products in violation of Plaintiff's rights.

Plaintiff further requests expedited, limited discovery from Defendants Roshen USA and AV Delicious and the setting of a schedule leading to a hearing on a Preliminary Injunction.

## I. BACKGROUND

### A.    PLAINTIFF'S EFFORTS IN BUILDING THE ROSHEN™ BRAND

On April 10, 2008, Plaintiff and Konditerska Korporatzia "Roshen" ("Roshen Ukraine"), the Ukrainian company that owns the ROSHEN™ Mark and produces ROSHEN™ Products, executed an exclusive license agreement ("Exclusive License Agreement") making Plaintiff the exclusive licensee and distributor in the United States of products bearing the ROSHEN™ Mark. (A copy of the Exclusive License Agreement is attached as Exhibit A to the Declaration of Gregory Vernikov in Support of Motion for Preliminary Injunction as to Roshen USA Corp. and AV Delicious Foods, Inc. (hereinafter such references will be identified as "Vernikov Decl. para. ___ or Exh. ___")).  Plaintiff has been successfully selling products under the ROSHEN™ Mark in

the United States since its exclusive license began on May 1, 2008, and has grown the business to the point that Roshen Ukraine has noted that the U.S. market is now one of the largest for its products.  (Vernikov Decl. para. 10 and Exh. D).

The ROSHEN™ Products are directed at a recognized American market made up of consumers who are emigrants or closely related to emigrants from Eastern Europe, especially the Ukraine, for whom the ROSHEN™ Mark has long been a familiar brand. (Vernikov Decl. para. 9).  Interpage has put great effort into promoting, marketing and distributing products under the ROSHEN™ Mark, and ROSHEN™ Product sales represent a substantial percentage of Interpage's business.  Interpage has had to forego making deals to bring in other products from Eastern Europe in order to maintain this exclusive license.  (Vernikov Decl. para. 20).

Promotion of a brand makes a trademark stronger.  However, as a trademark is representative of the goodwill behind the mark, maintaining the quality of the products sold under the mark is paramount, especially when the mark covers perishable food items.  Plaintiff Interpage is very experienced in importing, marketing and distributing food products.  It has been in this business for 20 years.  The company maintains all its products under optimum storage conditions, using the best technology available.  (Vernikov Decl. para. 11).  Interpage's ROSHEN™ Products are always stored in the optimal temperature range as required by the type of product to maintain proper quality standards.  Interpage has never sold any products, including the ROSHEN™ Products, after their expiration dates and no reputable company would do so. (Vernikov Decl. para. 12).  In these ways, Plaintiff Interpage maintains the quality of products sold under the ROSHEN™ Mark, and in fact is required to do so by the terms of its Exclusive License Agreement.

2

**B.     DEFENDANTS' ACTIONS IN TRADING ON PLAINTIFF'S EFFORTS**

The instant motion is the result of Plaintiff's recent discovery that products bearing the ROSHEN™ Mark are currently on their way to the United States by sea and destined for delivery to the defendant company Roshen USA by way of AV Delicious or some "strawman" receiving such products on their behalf.  (Vernikov Decl. para. 19).  This shipment poses an immediate threat to Plaintiff's rights that cannot wait for resolution in the normal course of litigation.

Plaintiff Interpage filed suit against these Defendants on June 1, 2010.  (Declaration of Charles H. Knull In Support of Plaintiff's Motion for a Preliminary Injunction as to Defendants Roshen USA Corp. and AV Delicious Foods, Inc., Exhibit A (hereinafter such references will be identified as "Knull Decl. para. __ or Exh. __")).  Earlier, in late March 2010, Plaintiff had discovered that Defendant Roshen USA, a newly organized New York Corporation formed in April 2010, had been soliciting Plaintiff's customers to purchase ROSHEN™ Products from it rather than Plaintiff.  Roshen USA has distributed a flyer to stores and wholesalers falsely asserting that it is the importer of ROSHEN™ Products.  (Vernikov Decl. para. 13 and Exh. E). On behalf of Roshen USA, Defendant AV Delicious has registered a domain name, www.roshenusa.com, which apparently will be used to promote this falsity.  (Vernikov Decl. para. 9 and Exh. F).  As discussed further infra in Section II(B)(1), the statements in this flyer are false on their face in that they necessarily imply that Plaintiff is no longer the exclusive licensee and distributor of ROSHEN™ Products.  Thus, Roshen USA and its supporting company AV Delicious are attempting through various means to circumvent the Exclusive License Agreement and to sell ROSHEN™ Products in the United States.

Interpage's president has also discovered from customers that Defendants Roshen USA

and AV Delicious have learned the identities of Interpage's customers and have contacted them with the intention of diverting business from Interpage by offering to sell its customers products bearing the ROSHEN™ Mark. (Vernikov Decl. para. 15).  The actions of Roshen USA and AV Delicious will disrupt Plaintiff Interpage's sales efforts and will divert sales to Defendants Roshen USA and AV Delicious.

By contacting Interpage's customers and making false statements as to their rights with respect to the ROSHEN™ Products, Defendants Roshen USA and AV Delicious have intentionally interfered with Interpage's ongoing and potential business relationships. (Vernikov Decl. para. 16).  The actions of Roshen USA and AV Delicious are generally confusing and thwarting consumers and potential customers as they look to make contact with Interpage. (Vernikov Decl. para. 18).  Interpage has continuing and established business relations with its customers.  Interpage's relationships with its customers have been harmed and, in some cases severed, because of Defendants Roshen USA and AV Delicious' actions in making false statements to its customers, leading them to believe that Interpage is not the legitimate importer of ROSHEN™ Mark products. (Vernikov Decl. para. 24).

The individuals running Roshen USA have no experience whatsoever in the business of importing food products into the United States, caring for warehoused food products, or distributing such products.  Indeed, these individuals have just arrived from overseas and have no experience in doing any type of business in the United States.  (Vernikov Decl. para. 21).  The inexperience of Roshen USA creates a danger to Interpage in that potential consumer complaints regarding quality control problems caused by Defendants' inexperience with food warehousing and distribution will be made to Plaintiff Interpage, since Interpage is the exclusive licensee and consumers associate ROSHEN™ Products with Interpage. (Vernikov Decl. para. 22).

4

The action filed by Plaintiff contains claims for trademark infringement, unfair competition and related causes against Defendants Roshen USA and AV Delicious under federal law, New York state law, and common law.  The action also includes breach of contract and related claims against Roshen Ukraine which are aside from the claims supporting this motion. Plaintiff believes that agents or employees of Roshen Ukraine are assisting Roshen USA and that, as a result, Roshen Ukraine is in partial breach of the Exclusive License Agreement. However, the crux of the instant request for relief is based upon the Exclusive License Agreement's term, which is in effect until at least May 1, 2011.

## II.  ARGUMENT

### A.      STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

The standard in the Second Circuit for granting a preliminary injunction is a showing of (1) irreparable harm, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping in the movant's favor.  Wright v. City of New York, No. 09-CV-2452, 2010 WL 167951, at *1 (E.D.N.Y. Jan. 06, 2010) (citing Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir.1992)).  See also Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007); Gund, Inc. v. SKM Enterprises, Inc., 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001).

#### 1.      An Injunction Would Be In The Public Interest

The Second Circuit as yet does not require any consideration of the public interest as part of the preliminary injunction standard.  However, Plaintiff's problem meets not only the Second Circuit's test as outlined above, but also the broader test recently established by the U.S. Supreme Court in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008),

because there is a public interest in granting an injunction in this matter.

The paramount concern of trademark law is protection of the public. <u>American Footwear Corp. v. General Footwear Co.</u>, 609 F.2d 655, 663-64 (2d Cir. 1979), cert. denied, 445 U.S. 951 (1980). In the instant matter, the issuance of an injunction would protect the public by putting a stop to the false statements issuing from Roshen USA and AV Delicious with respect to the ROSHEN™ Products they are selling and/or marketing. It will also prevent Roshen USA, which lacks experience in the food import business, from foisting on U.S. consumers products that may be stale or may not have been properly warehoused. These are goods that "are not genuine if they do not conform to the trademark holder's quality control standard." <u>Zino Davidoff SA, v. CVS Corp.</u>, 571 F.3d 238, 243 (2d Cir. 2009) [citing cases]. An injunction will not harm the public, as the public will still be able to obtain ROSHEN™ Products, and only obtain them under proper quality control conditions, from Plaintiff, which has promised the trademark licensor to respect its quality control requirements.

### 2.      There Would Be Irreparable Harm If No Injunction Is Ordered

The single most important prerequisite for the issuance of a preliminary injunction is a demonstration that the moving party is likely to suffer irreparable harm before a decision on the merits can be rendered if a preliminary injunction is not granted. <u>Bell & Howell: Mamiya Co. v. Masel Supply Co.</u>, 719 F.2d 42, 45 (2d Cir. 1983). Plaintiff has presented "independent evidence of likely irreparable harm...." <u>Federal Express Corp. v. Federal Espresso, Inc.</u>, 201 F.3d 168, 171 (2d Cir. 2000). The inexperience of Roshen USA creates a danger to Plaintiff. The consumer complaints that will be caused by their inexperience and the potentially inferior product they are likely to distribute will be addressed to Plaintiff and not Roshen USA, since Plaintiff is the exclusive licensee and distributor of ROSHEN™ Products. Moreover, Plaintiff Interpage's

relationships with its customers have been harmed and, in some cases severed, because of Defendants Roshen USA and AV Delicious' actions in making false statements to its customers, leading them to believe that Interpage is not the legitimate importer of ROSHEN™ Mark products.  (Vernikov Decl. paras. 22 and 24).

Plaintiff is consequently losing the benefit of the goodwill that it has created in the ROSHEN™ brand.  It is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard.  See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 43 (2d Cir. 1986); Saban Entm't, Inc. v. 222 World Corp., 865 F. Supp. 1047, 1056 (S.D.N.Y. 1994); Kraft Gen. Foods, Inc. v. Allied Old English, Inc., 831 F. Supp. 123, 136 (S.D.N.Y. 1993).  It has also been held repeatedly in the Second Circuit that where there is likely confusion in an action for trademark infringement, the requisite irreparable harm is established as a matter of course.  See Zino Davidoff SA, 571 F.3d at 246-47; Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005); Gucci Am., Inc. v. Curveal Fashion, No. 09 Civ. 8458(RJS), 2010 WL 308303, at *2 (S.D.N.Y. Jan. 20, 2010).  See also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, Vol. 5 § 30:31 (2008) ("[P]ersuasive evidence that there will be a likelihood of confusion will establish both a probability of success as well as irreparable injury.") (citing New Kayak Pool Corp. v. R&P Pools, Inc., 246 F.3d 183 (2d Cir. 2001)).  Here, Plaintiff Interpage is the exclusive licensee of the mark and is "likely to be damaged" by the actions of Defendants.  Zip International Group LLC v. Trilini Imports, Inc., No. 09-CV-2437 (JG)(VVP), 2010 WL 648696, at *3 (E.D.N.Y. Feb. 22, 2010) (quoting DEP Corp. v. Interstate Cigar Co., 622 F.2d. 621, 624 n.3 (2d Cir. 1980)).  As discussed below, Plaintiff is likely to succeed on its Section 43(a) claims, and

therefore is entitled to a presumption of irreparable harm.

### 3.     An Injunction Would Maintain The Status Quo

An injunction would not alter the status quo in this matter, so the injunction would not

mandate any added action.  See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60

F.3d 27, 33-35 (2d Cir. 1995).  Plaintiff is the exclusive distributor of the products.  Defendants

are not.  Failure to grant the injunction would allow the Defendants to continue their sharp

practices which are destroying the brand that Plaintiff has built up. (Vernikov Decl. paras 13-18).

### 4.     The Balance Of Equities Tips In Movant's Favor

Not granting an injunction would greatly harm Plaintiff, the exclusive licensee and

distributor of ROSHEN™ Products.  Without it, Plaintiff's Exclusive License is worthless, as the

Defendants would also sell ROSHEN™ Products.  Les Ballets Trockadero De Monte Carlo, Inc.

v. Trevino, 945 F. Supp. 563, 574 (S.D.N.Y. 1996).

## B.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### 1.     Likelihood Of Success Under The Standard For Unfair Competition (False Statements)

Section 43(a) of the Lanham Act provides, in pertinent part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to

be damaged by such act.

15 U.S.C. § 1125(a)(1) (2010).

Two types of advertising claims are actionable under Section 43(a): (i) advertisements that are false on their face, known as "literally false" claims, and (ii) advertisements that, though literally true, are likely to mislead and confuse consumers, known as "implied claims."  See S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001); Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992).  Literal falsity claims encompass claims that an advertisement is "false by necessary implication."  Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007).

Defendant Roshen USA has distributed an advertising flyer written in the Russian language to Plaintiff's current and potential customers stating that it is or will be a distributor of ROSHEN™ Products. (See Vernikov Decl. Exh. E and para. 13).  The following is an English translation of the flyer:

> We appreciate your interest in "Roshen's" trade mark production.
>
> In the nearest time Trade house "Roshen USA" will be carry out its activity at the territory of USA and Canada.
>
> We will be glad to see you as potential partners in promotion and selling "Roshen's" production.
>
> The Trade House " Roshen" will do everything possible to mutual understanding of parties.
>
> For communication we advise you the e-mail address  roshen.usa@gmail.com
>
> Best regards,
>
> Dmitri Vainberg
> Trade House "Roshen USA"

The statements contained in the flyer are false by necessary implication, and thus literally

false, in that the flyer states that Roshen USA is or will be offering the ROSHEN™ Products for sale. It thereby necessarily implies that Plaintiff is or will no longer be the exclusive distributor of ROSHEN™ Products. Thus, in violation of Section 43(a), Defendants have used in commercial advertising a false or misleading representation of fact and misrepresented the nature of its and Plaintiff's goods, services, and commercial activities.

2.     **Likelihood Of Success Under The Polaroid Test (Quality Control)**

The crux of Plaintiff's claim of Section 43(a) trademark infringement is one of quality control. Where a trademark owner cannot control the quality of goods sold by a distributor, the goods may not be considered genuine. El Greco Leather Products Co. v. Shoe World, 806 F.2d 392, 395 (2d Cir. 1986). In this case, the trademark owner controls the quality of the goods sold through its exclusive licensee, Plaintiff, via the quality control clause contained in the Exclusive License Agreement, and therefore, those goods sold by Plaintiff are genuine. The goods that are imminently going to be sold by Defendants, however, are not subject to the quality control standards of the Exclusive License Agreement and therefore would not be genuine and would cause harm to Plaintiff.

Section 43(a) of the Lanham Act expressly prohibits the "use in commerce of any word, term, name, symbol, or device (or any false designation of origin) that is: 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ....'" 15 U.S.C. §§ 1125(a)(1) and (a)(1)(A) (2010). It is well-established that Lanham Act Section 43(a) protects unregistered marks like the ROSHEN™ Mark in addition to registered marks. See Two Pesos v. Taco Cabana, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered

10

trademarks."); <u>Rescuecom Corp. v. Google Inc.</u>, 562 F.3d 123, 128 n.3 (2d Cir. 2009) (citing

<u>Two Pesos</u>, 505 U.S. at 768); <u>DC Comics v. Kryptonite Corp.</u>, 336 F. Supp.2d 324, 331

(S.D.N.Y. 2004) (citing Section 43(a) and noting that it "protects both registered and

unregistered marks.").  (It is noted that there is a ROSHEN trademark application pending at the

U.S. Patent and Trademark Office (Knull Decl. para. 5 and Exh. B), and that this application

promises to become registered.  The registration would, of course, provide its licensee, Plaintiff,

perhaps with an even stronger argument; however, the instant motion is brought under the

mark's current status).

 As to trademark infringement, the Second Circuit has articulated eight factors (often

referred to as "the Polaroid factors") to be considered when assessing the likelihood of consumer

confusion:

 (1) the strength of the plaintiff's mark;

 (2) the similarity of the plaintiff's and defendant's marks;

 (3) the competitive proximity of the products or services;

 (4) the likelihood that the plaintiff will "bridge the gap" and offer a product or service

  similar to the defendant's;

 (5) actual confusion between the products or services;

 (6) good faith on the defendant's part;

 (7) the quality of the defendant's products or services; and

 (8) the sophistication of buyers.

 <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir.1961), cert. denied, 368 U.S.

820 (1961).  No single factor in the Polaroid analysis is intended to be dispositive.  <u>See</u> <u>Natural</u>

<u>Organics, Inc. v. Nutraceutical Corp.</u>, 426 F.3d 576, 578 (2d Cir. 2005).  The proper analysis

under Polaroid is whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.  For a finding of infringement a probability of confusion, not a mere possibility, must be found to exist."  Franklin Resources, Inc. v. Franklin Credit Management Corp., 988 F. Supp. 322, 326 (S.D.N.Y. 1997) (quoting Gruner + Jahr USA Publishing v. Meridith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993)).  The following is an analysis of these factors as they apply to this motion:

### i.  Factor (1): The ROSHEN™ Mark Is A Strong Trademark.

The first Polaroid factor relates to strength of the plaintiff's mark.  Strong marks provide persuasive support for a finding of likely confusion under the first Polaroid factor.  See Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd., No. 95 Civ. 4008 (AGS), 1995 WL 528001, at *7 (S.D.N.Y. Sept. 6, 1995) ("The strength of a mark is among the most important factors in the Polaroid [] analysis….") (citation omitted).

In the instant matter, Plaintiff has the exclusive right to use the ROSHEN™ Mark in the United States. The ROSHEN™ Mark carries an especially strong familiarity within the recognized American market to which ROSHEN™ Products are directed, namely, consumers who are emigrants or closely related to emigrants from Eastern Europe, especially the Ukraine. (Vernikov Decl. para. 9).  The strength and familiarity of the ROSHEN™ Mark is evidenced by Plaintiff's ability to successfully market the ROSHEN™ Products in the United States. (Vernikov Decl. para. 10 and Exh.  D).  Moreover, the mark has acquired secondary meaning in the United States through Plaintiff's extensive efforts to promote and market ROSHEN™ Products.  See Thompson Med. Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985).

Roshen USA and AV Delicious' intended use of the ROSHEN™ Mark provides further

evidence of the secondary meaning it has acquired . See Tri-Star Pictures, Inc. v. Unger, 14 F.

Supp.2d 339, 351 (S.D.N.Y. 1998).  In choosing to sell products bearing the ROSHEN™ Mark,

Roshen USA and AV Delicious were necessarily familiar with the success of Plaintiff in

promoting the ROSHEN™ Mark in the United States, as they have used Plaintiff's list of

customers in order to build their business. (Vernikov. Decl. para. 15).

### ii.  Factor (2): Plaintiff's and Defendants' Marks are Identical.

The second Polaroid factor relates to the similarity between the plaintiff's and

defendant's marks.  In the instant matter, both Plaintiff and Defendants Roshen USA and AV

Delicious are using the ROSHEN™ Mark.  Thus, the mark used by Roshen USA and AV

Delicious is not merely similar, but identical to the mark used by Plaintiff.

### iii.  Factor (3): The Competitive Proximity is Extremely Close.

The third Polaroid factor relates to the competitive proximity of the products.  This

inquiry looks both to the nature of the goods and the structure of the relevant market, and

includes consideration of "the class of consumers to whom the goods are sold, the manner of

advertising, the channels through which the goods are sold, and the extent to which the goods or

services fall within the same class or are used together." Clinique Laboratories, Inc. v. Dep

Corp., 945 F.Supp. 547, 553 (S.D.N.Y. 1996) (citations omitted).  Thus, "the closer the

secondary user's goods are to those the consumer has seen marketed under the prior user's brand,

the more likely that the consumer will mistakenly assume a common source." Virgin Enterprises

Ltd. v. Nawab, 335 F.3d 141, 150 (2d Cir. 2003) (citation omitted).  In the instant matter,

Plaintiff and Defendants clearly operate in the same channels of trade.  In fact, Roshen USA and

AV Delicious have solicited Plaintiff's own customers to purchase Defendants' goods.

(Vernikov Decl. para. 13 and 15).  Moreover, the goods are identical in appearance and bear the

identical ROSHEN™ Mark.  Thus, there is a very close competitive proximity between the products distributed by Plaintiff and those distributed by Defendants.  Aside from the difference in quality resulting from Plaintiff's adherence to the quality control requirements outlined in its Exclusive License Agreement, the goods distributed by Plaintiff and those distributed by Defendants are the same.

### iv.  Factor (4): "Bridging the Gap" Is Not at Issue.

The fourth Polaroid factor relates to the likelihood that the plaintiff will "bridge the gap" and offer a product similar to the defendant's product.  See Tri-Star Pictures, 14 F. Supp.2d at 356 (citation omitted).  The goods distributed by Plaintiff and those distributed by Defendant are the same, aside from the difference in quality resulting from Plaintiff's adherence to the quality control requirements outlined in its Exclusive License Agreement.  Thus, this factor is not relevant to this analysis.

### v.  Factor (5): Actual Confusion Is Not Required.

The fifth Polaroid factor relates to whether there has been actual confusion between the products.  However, a showing of actual confusion is not required for relief.  Lois Sportswear, U.S.A. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986) ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.").

### vi.  Factor (6): Defendants Are Not Acting in Good Faith.

The sixth Polaroid factor relates to whether the defendant has adopted the trademark in good faith.  Bad faith is shown by demonstrating that the defendant adopted the mark with the intention of capitalizing on the mark holder's reputation and goodwill.  See Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1995) (citations omitted).  A defendant's awareness

of plaintiff's mark may give rise to an inference of bad faith, which is bolstered if the defendant offers no credible explanation for its adoption of the mark.  Artisan Mfg. Corp. v. All Granite & Marble Corp., 559 F. Supp.2d 442, 452 (S.D.N.Y. 2008) (citation omitted). See also Pfizer Inc. v. Sachs, 652 F. Supp.2d 512, 523 (S.D.N.Y. 2009) (noting that defendants were aware of plaintiff's marks and that defendants refused to comply with plaintiff's cease-and-desist letters). "[W]hen a company appropriates an identical mark that is well-known and has acquired a secondary meaning, an inference can be drawn that the company intends to capitalize on the goodwill and reputation of the mark…." Stern's Miracle-Gro Products, Inc. v. Shark Products, Inc., 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993).

In the instant matter, Roshen USA and AV Delicious are clearly aware of the ROSHEN™ Mark, as they have adopted the identical mark for use in distributing products they import and to offer those products to Plaintiff's customers.  Moreover, in choosing to sell products bearing the ROSHEN™ Mark, Roshen USA and AV Delicious were necessarily familiar with the success of Plaintiff in promoting the ROSHEN™ Mark in the United States. (See Vernikov Decl. para. 10).  In essence, Roshen USA and AV Delicious, who were aware of Plaintiff's status as exclusive licensee and distributor of the ROSHEN™ brand, have chosen to piggyback on Plaintiff's extensive and successful efforts to market and promote ROSHEN™ Products in the United States.  (Vernikov Decl. paras. 15-28).  As such, this factor must be weighed in favor of Plaintiff.  See E.I. DuPont de Nemours & Co. v. Yoshida International, Inc., 393 F. Supp. 502, 514 (E.D.N.Y. 1975).  Moreover, these Defendants appear to be operating in an attempt to avoid responsibility for their actions.  AV Delicious has at least three addresses (Knull Decl. para. 7) and Roshen USA is not the owner of its own domain name, which is registered to AV Delicious.  (Venikov Decl. Exh. F).

<u>vii.  Factor (7): Quality of the Products.</u>

As noted above, Defendants' goods cannot be considered as being genuine because they are not subject to the quality control standards imposed upon Plaintiff as exclusive licensee.  <u>El Greco Leather Products</u>, 806 F.2d at 395.  Plaintiff's "reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  <u>Pfizer Inc. v. Sachs</u>, 652 F. Supp.2d at 523 (quotation omitted).  Thus, confusion can cause damage to a plaintiff's mark and reputation.  <u>Virgin Enters.</u>, 335 F.3d at 152.

In the instant matter, Plaintiff has been in the food import and distribution business for 20 years and has procedures in place for maintaining the quality of ROSHEN™ Products in accordance with its Exclusive License Agreement, which explicitly requires it to maintain the quality of the ROSHEN™ Products it distributes. (Vernikov Decl. Exh. A at clause 4).  By contrast, Roshen USA and AV Delicious have no experience or expertise in the food import business (Vernikov Decl. para. 21) and are under no contractual requirement to takes steps to maintain a particular standard of quality of the ROSHEN™ Products.  Plaintiff has been receiving complaints from consumers with respect to stale or otherwise defective products which have entered the U.S. by the gray market.  (Vernikov Decl. para. 25).   Not surprisingly, these complaints have been made to Plaintiff due to consumer confusion with regard to the source of these products.  These complaints have not been generated by Defendants' actions, as Defendants have not yet brought ROSHEN™ Products into the U.S.  However, because Defendants are not bound by quality control standards, it is reasonable to believe that if Defendants bring ROSHEN™ Products into the U.S., Plaintiff will receive more complaints with regard to quality of the products.  The poorer quality of products imported and stored by Defendants will harm the reputation of Plaintiff.  This factor weighs in favor of Plaintiff.

<u>viii.  Factor (8): Sophistication of Buyers of ROSHEN™ Products.</u>

The eighth Polaroid factor analyzes the level of sophistication of consumers in the relevant market.  Generally, confusion is deemed to be especially likely for "unsophisticated buyers."  <u>See</u> <u>Guinness United Distillers & Vintners B.V. v. Anheuser-Busch, Inc.</u>, No. 02 Civ. 0861(LMM), 2002 WL 1543817, at *6 (S.D.N.Y.  July 12, 2002) (citations omitted).

Most people who purchase ROSHEN™ Products do so because they are knowledgeable of the products and of the ROSHEN™ brand generally.  The ROSHEN™ Products are manufactured in the Ukraine and are marketed to a recognized American market made up of consumers who are emigrants or closely related to emigrants from Eastern Europe, especially the Ukraine nation, and thus familiar with the ROSHEN™ brand.  (Vernikov Decl. para. 3).  In this sense, purchasers of ROSHEN™ Products may be considered sophisticated with regard to the ROSHEN™ brand.  However, in light of the fact that the products distributed by Roshen USA and AV Delicious bear a trademark that is not merely similar, but identical, to the trademark on products distributed by Plaintiff, and in light of the false statements made by Roshen USA and AV Delicious to consumers and wholesalers with respect to the ROSHEN™ Products, consumer sophistication does not and could not reduce the likelihood of consumer confusion in the instant situation.

**3.     Likelihood Of Success Under New York Statutory And Common Law**

<u>i.  New York Statutory and Common Law Infringement.</u>

The elements of Plaintiff's New York statutory and common law infringement claims essentially mirror those of the Lanham Act.  <u>See</u> <u>Burberry Ltd. and Burberry USA v. Designers Imports, Inc.</u>, No. 07 Civ. 3997(PAC), 2010 WL 199906, at *8 (S.D .Y. Jan 19, 2010); <u>GTFM, Inc. v. Solid Clothing, Inc.</u>, 215 F. Supp.2d 273, 300 (S.D.N.Y. 2002).  Therefore, Plaintiff is

likely to succeed on these claims.

### ii.  N.Y.G.B.L § 360-l.

Plaintiff is also likely to succeed on its New York State Law Dilution claim (Count V) under N.Y.G.B.L. § 360-l (erroneously cited as § 368d in the Complaint).  New York law does not require a showing of fame, but rather, only requires demonstrating acquired distinctiveness of the mark.  See Kraft, 831 F. Supp. at 133-34.  As demonstrated above, the ROSHEN™ Mark has acquired secondary meaning, especially for Eastern European immigrants, and it is tarnished by Defendants' use.  Tarnishment occurs when a plaintiff's trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context," with the result that "the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods."   Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 43 (2d Cir. 1994) (citing Coca-Cola Co. v. Gemini Rising, Inc., 346 F.Supp. 1183 (E.D.N.Y. 1972)).  A third consideration, the predatory intent of the defendant, may not be precisely an element of the violation but is of significance.  Deere & Co., 41 F.3d at 42.  These factors weigh in favor of Plaintiff, and demonstrate the likelihood of Plaintiff's success on the merits of its dilution claim. See Id. at 42-43 (affirming district court's entry of a preliminary injunction based on likelihood that defendant violated New York's anti-dilution statute).

### iii.  New York Common Law Unfair Competition.

Plaintiff is likely to succeed on its New York Common Law Unfair Competition claim. To assert an unfair competition claim under New York common law, a plaintiff must show a "bad faith misappropriation of [plaintiff's] labors and expenditures … likely to cause confusion or to deceive purchasers as to the origin of the goods."  Nabisco, Inc. v. PF Brands, Inc., 50 F. Supp.2d 188, 212 (S.D.N.Y. 1999) (citations omitted).  See also Kraft, 831 F. Supp. at 135;

18

Stern's Miracle-Gro, 823 F. Supp. at 1093; W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567,

576 (2d Cir. 1993); Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).

The "likelihood of confusion is judged in an unfair competition claim in the same manner as a

Lanham Act claim." Nabisco, 50 F. Supp.2d at 212 (citation omitted). See also Tri-Star Pictures,

14 F. Supp.2d at 363.   As demonstrated above, there is a clear likelihood of confusion between

Plaintiff's and Roshen USA and AV Delicious's products.  Moreover, bad faith is evident, as

Roshen USA and AV Delicious have acted with the intention of piggybacking on the marketing

efforts of Plaintiff, which have built a U.S. market for the ROSHEN™ brand and made it among

the top markets for this brand.

iv.  N.Y.G.B.L. § 349.

Plaintiff is likely to succeed under the New York Deceptive Business Acts law.  This

statute proscribes "[d]eceptive acts and practices in the conduct of any business, trade or

commerce or in the furnishing of any service" in New York.  N.Y.

G.B.L. § 349 (2009).  A party challenging an act or practice under this statute must show

that: (1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was

misleading in a material way, and (3) that plaintiff consequently suffered injury.  GTFM, 215 F.

Supp.2d at 301-02.  See also Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  Roshen

USA and AV Delicious have engaged in a consumer-oriented act by contacting Plaintiff's

customers via flyers and otherwise and advertising that Roshen USA is the distributor of

ROSHEN™ Products.  (Vernikov Decl. para 13 and Exh. E).  These actions were materially

misleading in that Plaintiff is the exclusive licensee and distributor of ROSHEN™ Products

under the Exclusive License Agreement executed by it and Roshen Ukraine, which agreement

sets quality standards for the ROSHEN™ Products imported and distributed by Plaintiff.

19

Finally, Roshen USA and AV Delicious's actions have caused harm to Plaintiff by causing

Plaintiff to lose business to Defendants and by damaging Plaintiff's reputation with consumers.

## IV. CONCLUSION

For the reasons stated in this memorandum, Plaintiff Interpage respectfully requests that

the Court grant its motion for a preliminary injunction.

Dated: New York, New York
      June 11, 2010

Respectfully Submitted,

By: _____
ULLMAN, SHAPIRO & ULLMAN, LLP
Charles H. Knull (CHK-1741)
Linda M. Dougherty (LD-2813)
299 Broadway, Suite 1700
New York, New York  10007
Tel. (212) 571-0068
*Attorneys for Plaintiff*

20